UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | | |
| | Plaintiff, | CIVIL ACTION NO. 6:08-CV-385-LED |
| v. | | |
| VERIZON CLINTON CENTER DRIVE CORP. et al. | | **JURY TRIAL REQUESTED** |
| | Defendants. | |

**DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF ISSUES ................................................................................... 1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2

     A.    "Remotely Located Reception Stations" Claims 1-15 of the '101 Patent ............. 2

     B.    "Synchronously Related" Claims 2-13 of the '546 Patent...................................... 3

IV.   LEGAL STANDARD............................................................................................ 6

     A.    Summary Judgment ............................................................................................ 6

     B.    Indefiniteness ..................................................................................................... 6

V.    ARGUMENT ........................................................................................................ 8

     A.    "Remotely Located Reception Stations" ................................................................. 8

          1.    Term Lacks Antecedent Basis .................................................................. 8

          2.    Term Lacks Written Description ................................................................. 9

          3.    Term Creates Logical Inconsistency........................................................ 10

     B.    "Synchronously Related"...................................................................................... 13

VI.   CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336 (Fed. Cir. 2002) ............................................. 7

*Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200 (Fed. Cir. 1991) ............................. 6

*Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14 (Fed. Cir. 2000) ................................. 7

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) ....................................................... 12

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) ................................. 6

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291(Fed. Cir. 2005) ....... 6

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ...................... 7, 13

*Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332 (Fed. Cir. 2003) .................................................... 7, 14

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368 (Fed.Cir. 2009) ..................................... 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)........................................................................................................................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................... 6

*Michael S. Sutton Ltd. v. Nokia Corp.*, 647 F. Supp. 2d 737 (E.D. Tex. 2009) (Davis J.) ....... 7, 13

## Statutes

35 U.S.C. §112, ¶ 2 ........................................................................................................... passim

## Federal Rules

37 C.F.R. 1.75 (d)(1).......................................................................................................... 8

Fed. R. Civ. P. 56(c) ........................................................................................................... 6

Fed. R. Civ. P. 56(e) ........................................................................................................... 6

## Rules

Local Rules CV-7 and CV-56............................................................................................... 1

## Other Authorities

MPEP § 1302.01 ................................................................................................................. 8

MPEP § 2173.05(e).............................................................................................................. 8

## I.    INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rules CV-7 and CV-56, and the Court's Docket Control Orders of April 22, 2009 (Dkt. 173) and December 15, 2009 (Dkt. 265), Defendants Verizon Clinton Center Drive Corp. ("VCCDC") and SmartSynch, Inc. (collectively, "Defendants") respectfully move for summary judgment that Claims 1-15[1] of U.S. Pat. No. 5,388,101 (the "'101 Patent") are invalid as indefinite under 35 U.S.C. §112, ¶ 2 because the term "remotely located reception stations" recited in these claims lacks antecedent basis, is not described anywhere in the specification, creates a logical inconsistency and is therefore insolubly ambiguous and incapable of construction.

Defendants further move for summary judgment that Claims 2-13[2] of U.S. Patent No. 5,481,546 (the "'546 Patent") are invalid as indefinite under 35 U.S.C. §112, ¶ 2 because it is unclear what the term "synchronously related" relates to in these claims, which renders it insolubly ambiguous and incapable of construction.

Plaintiff Eon Corp. IP Holdings, LLC ("IP Holdings") currently asserts all 20 claims of the '101 Patent and all 14 claims of the '546 Patent.  This motion addresses Claims 1-15 of the '101 Patent and Claims 2-13 of the '546 Patent.

## II.    STATEMENT OF ISSUES

The issues to be decided by the Court are:

1.    Whether Claims 1-15 of the '101 Patent" are invalid for indefiniteness under 35 U.S.C. §112, ¶ 2 because the term "remotely located reception stations" is not amenable to construction.

---

[1]    Claims 2-15 of the '101 Patent depend from Claim 1 and therefore also include the term "reception stations."

[2]    Claims 3-13 of the '546 Patent depend from Claim 2 and therefore also include the term "synchronously related data messages."

2. Whether Claims 2-13 of the '546 Patent are invalid for indefiniteness under 35 U.S.C. §112, ¶ 2 because the term "synchronously related" is not amenable to construction.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. <u>"Remotely Located Reception Stations" Claims 1-15 of the '101 Patent</u>

1. The term "remotely located reception stations" appears in independent Claim 1 of the '101 Patent and is therefore also included in Claims 2-15 that depend from Claim 1. (Ex. A, '101 Patent, 11:39.)

2. Claims 1-15 are system claims directed to a "base station configuration in a two-way communication interactive video network." (*Id.* at 11:20-22, 56, 68; 12:9, 16, 22, 26, 32, 37, 41, 47, 52, 58, 63.)

3. Independent Claim 1 recites:

(Element 1)[3] A base station configuration in a two-way communication interactive video network having a network hub switching center for routing communications from and to a plurality of subscriber units at various geographic locations served by a base station that processes digital data modulated on an r-f carrier and transmitted from a plurality of subscriber units dispersed over a predetermined base station geographic area by presenting multiplexed digital data synchronously related to the base station broadcast signal for communication from identified individual subscriber units within designated geographic service areas, comprising in combination,

(Element 2) base station data processing and transmission facilities for transmitting to a set of local subscriber units and receiving from a subset of those local subscriber units multiplexed synchronously related digital data messages of variable lengths for point-to-point communication between individual subscribers with **remotely located reception stations**,

(Element 3) base station reception means for receiving and processing data messages from the set of local subscriber units at that base station comprising a set of cell subdivision sites partitioned from said base station geographic area and dispersed over the base station geographic area, each cell subdivision site being

---

[3] Defendants contend that the preamble of this claim is limiting, as discussed in their Responsive Claim Construction Brief filed concurrently herewith.

adapted for receiving-only low power digital messages transmitted from local subscriber units within range of the partitioned cell site areas, and

(Element 4)  a set of local subscriber transceiver units including low power mobile units located within the base station geographic area each adapted to communicate with said base station by way of digital data signals of variable lengths synchronously related to said base station broadcast signal and timed for said multiplexed message transmission.

(*Id.* at 11:20-55 (reference numbers for claim elements and emphasis supplied).)

4.     The claimed "base station configuration" contains several elements, including Element 2 "base station data processing and transmission facilities…," which, in turn, includes a sub-element identified as "remotely located reception stations."  (*Id*. at 11:39.)

5.     The "remotely located reception stations" sub-element lacks any antecedent basis, that is, it does not appear anywhere in the disclosure of the '101 Patent, or in any other claim, or the prosecution history, or the pending *ex parte* reexaminations, or even in any of the related patents claiming priority to the '101 Patent.

6.     The term has no plain and ordinary meaning and nothing in the '101 Patent or related documents provides one.

**B.     "Synchronously Related" Claims 2-13 of the '546 Patent**

1.     This term appears in claims 1-15 of the '101 Patent and in all 14 claims of the '546 Patent (Ex. B, '546 Patent.)

2.     The '546 Patent is a continuation of the '101 Patent and shares the same specification.

3.      As filed, claims 1-15 of the '101 Patent specified that "synchronously related" was related to "said television broadcast signal."  (Ex. C, '101 Patent File History, Original Claims as Filed, at SKYTEL0000216.)

4.      The examiner rejected these claims under 35 U.S.C. §112, ¶ 2, as indefinite because "said television broadcast signal" lacked antecedent basis.  (Ex. D, '101 Patent File History, Office Action dated November 5, 1993, at SKYTEL0000243.)

5.      In response to this rejection, the applicant amended the claims by removing the reference to "said television broadcast signal" altogether. (Ex. E, '101 Patent File History, Amendment dated Office Action dated February 4, 1994, at SKYTEL0000261, 264.)

6.      The examiner once again rejected these claims as indefinite because "it [was] unclear what the digital signals are 'synchronously related' to." (Ex. F, '101 Patent File History, Office Action dated May 18, 1994, at SKYTEL0000281.)

7.      In response, the applicant amended the claims again by adding "<u>to said base station broadcast signal</u>" after the term "synchronously related."  (Ex. G, '101 Patent File History, Amendment and Response dated June 13, 1994, at SKYTEL0000283.)

8.      Claims 1-15 of the '101 Patent issued as thus amended. (Ex. A, '101 Patent at 11:54.)

9.      The '546 Patent application was filed on May 10, 1994 as a continuation of the '101 patent application.   (Ex. H, '546 Patent File History,

Notification of Filing of Continuing or Divisional Application, at SKYTEL0000346.)

10.     As filed, it included a set of claims almost identical to the original claims of the '101 Patent, which recited "synchronously related to said television broadcast signal."   (Ex. I, '546 Patent File History, Original Claims as Filed, at SKYTEL0000372.)

11.     By a preliminary amendment, the applicant removed the reference to "said television broadcast signal" from claim 1, canceled other originally filed claims, and added 13 new claims, all of which recited "synchronously related" again without any reference point.   (Ex. J, '546 Patent File History, Preliminary Amendment dated May 10, 1994, at SKYTEL0000399.)

12.     In response to a rejection that followed, the applicant amended claim 1 by adding the clause "to said base station broadcast signal" after the term "synchronously related," just as he did during the prosecution of the parent '101 patent application discussed above.   The applicant also amended claim 14 (then 47) by adding "synchronously related to said digital messages" and arguing that it was one of the features distinguishing claim 14 over the prior art.   (Ex. K, '546 Patent File History, Amendment and Response to Office Action, dated Dec. 6, 1994, at SKYTEL0000426-8.)

13.     The independent claim 2 and its dependent claims 3-13 were not amended, however, and issued without any reference point for the "synchronously related" language.   (Ex. B, '546 Patent at 11:47.)

MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS – Page 5

14.     On October 2, 2009, counsel for Plaintiff filed an *Ex Parte* Request for Certificate of Correction ("Request") with the PTO, seeking to replace the word "television" in claim 11 of the '101 Patent with the words "base station."   (Ex. L, Request for Certificate of Correction, EON065778.) (stating that this was merely a "typographical error" and that "reexamination is not required because the scope of the claim is not affected.")

## IV.   LEGAL STANDARD

### A.   <u>Summary Judgment</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1297-1298 (Fed. Cir. 2005).  To defeat a summary judgment motion, the opposing party must do "more than simply show that there is some metaphysical doubt as to the material facts." *TGIP, Inc. v. AT&T Corp.*, 512 F. Supp. 2d 727, 730 (E.D. Tex. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The opposing party must set forth "specific facts showing that there is a genuine issue for trial." *Id.*; Fed. R. Civ. P. 56(e).

### B.   <u>Indefiniteness</u>

Every patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. 112, ¶ 2; *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1217 (Fed. Cir. 1991).  "In the face of an allegation of indefiniteness, general principles of claim construction apply." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-1348 (Fed. Cir. 2005). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected

invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).   "Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Id.*   A claim that does not satisfy this standard is invalid.   *Id.* at 1256.   The accused infringer bears the burden of proving indefiniteness by clear and convincing evidence.   *Id.* at 1249-50.

To decide whether a claim is invalid for indefiniteness, the court must analyze "whether one skilled in the art would understand the bounds of the claim when read in light of the specification."   *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002). "Where the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then . . . the claim is simply invalid." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24 (Fed. Cir. 2000) (internal quotations omitted); *see also Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1341 (Fed. Cir. 2003) ("Adopting [the patentee's] proffered construction would require the court to import a limitation that is not only outside the bounds of the claims, the written description, and the prosecution history, but is also outside the scope of any written publication. We may not rewrite claims to preserve validity in that manner.").

Importantly, if a claim contains a term creating a logical inconsistency, the claim is invalid, even if the "logical inconsistency would be most easily resolved by the simple deletion of the [offending term]."   *Michael S. Sutton Ltd. v. Nokia Corp.*, 647 F. Supp. 2d 737, 745 (E.D. Tex. 2009) (Davis, J.); *see also Allen Eng'g*, 299 F.3d at 1349 ("We are simply tasked with determining whether the claims particularly point out and distinctly claim what the inventor regards as his invention. Moreover, it is of no moment that the contradiction is obvious: semantic

indefiniteness of claims is not rendered unobjectionable merely because it could have been corrected.") (internal citations and quotations omitted).

## V.      ARGUMENT

### A.      "Remotely Located Reception Stations"

Claims 1-15[4] of the '101 Patent are invalid as indefinite under 35 U.S.C. §112, ¶ 2 because the term "remotely located reception stations" recited in these claims lacks antecedent basis, is not described or defined anywhere in the specification, creates a logical inconsistency, and is therefore insolubly ambiguous and incapable of construction.

#### 1.      Term Lacks Antecedent Basis

Because it only appears once in Claim 1, and nowhere else, there is no clear support or antecedent basis in the specification for this term.  *See* 37 C.F.R. 1.75(d)(1) ("The terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description."); *see also* MPEP §§ 1302.01; 2173.05(e)  (explaining that the lack of clarity may arise when a claim refers to a term where there is no earlier recitation of the term).

As the MPEP notes, "antecedent problems in the claims are typically drafting oversights."  (*Id*.)  Indeed, as described in the Statement of Undisputed Material Facts, the lack of antecedent basis for this term is but one of many instances of sloppy drafting found in the patents-in-suit.[5]

---

[4]     Claims 2-15 of the '101 Patent depend from Claim 1 and therefore also include the term "reception stations."

[5]     The Court need look no further than claim 11 of the '101 Patent, which depends from claim 1.  As issued, claim 11 recited "digital signal pulses in a predetermined timing relationship synchronized with a television frame of said **television broadcast signal**." (Ex. A, '101 Patent at 12:43-46 (emphasis added).)  Claim 1 did initially include a reference to "said television broadcast signal," later removed and replaced with "said base station broadcast signal."  (Ex. C, '101 Patent File History, Original Claims as Filed.)  Last October, 14 years after the '101 Patent had issued and over a year after filing the instant action, counsel for Plaintiff filed a Request for Certificate of Correction

Whether the hopeless ambiguity of this term is the result of sloppy drafting, sloppy thinking or both, there is nothing in the patent or supporting documents to provide a sufficiently definite meaning to survive scrutiny under 35 U.S.C. § 112, ¶ 2.

2.    Term Lacks Written Description

The term "remotely located reception stations" does not appear anywhere in the disclosure of the '101 Patent, or any other claim, or in the prosecution history, in any of the related patents claiming priority to the '101 Patent, or in the pending *ex parte* reexaminations.[6] Thus, one of ordinary skill would not be able to find *any*, let alone a reasonably clear, description for this term in the intrinsic record rendering this term indefinite. *See ICU Med., Inc. v. Alaris Med. Sys., Inc*., 558 F.3d 1368 (Fed.Cir. 2009) ("To satisfy the written description requirement, a patent applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.") (internal citations and quotations omitted).

Nor would a skilled artisan be able to rely on any plain and ordinary meaning for this term because there is none.  This term is not found in any of the contemporaneous technical dictionaries or in the extrinsic record describing the efforts to commercialize the Asserted Patents.

---

with the PTO, stating that the word "television" appeared due to a "typographical error" and needed to be replaced with the words "base station."  Because the Request also stated that "the scope of the claim [would not be] affected" by the requested change, it was granted. (Ex. M, Certificate of Correction dated December 22, 2009.)

[6]   Tellingly, even the *ex parte* reexamination conducted by counsel for Plaintiff with an eye toward this litigation fails to provide any reference or explanation for this term.  (Ex. N, Response to Office Action in Ex Parte Reexamination, at 2-3) (arguing that various other claim terms "find support in the specification under different terminology").)

3.     Term Creates Logical Inconsistency

Claim 1 and its dependents are invalid because the claimed structure is logically

inconsistent.  The claimed "base station configuration" recites several elements, including:

> **base station data processing and transmission facilities** for
> transmitting to a set of local subscriber units and receiving from a
> subset of those local subscriber units multiplexed synchronously
> related digital data messages of variable lengths for point-to-point
> communication between individual subscribers with **remotely
> located reception stations**,
>
> **base station reception means** for receiving and processing data
> messages from the set of local subscriber units at that base station
> comprising a set of cell subdivision sites partitioned from said base
> station geographic area and dispersed over the base station
> geographic area, each cell subdivision site being adapted for
> receiving-only low power digital messages transmitted from local
> subscriber units within range of the partitioned cell site areas, …

(Ex. A, '101 Patent at 11:33-48 (emphasis added).)    "Base station data processing and

transmission facilities" generally relate to Local Area Repeater Station and Remote Receiver 3 in

Fig. 1 (identified below by a red circle) or Cell Base Station 3 in Fig. 6A.  (*Id*.)  "Base station

reception means" generally relate to Remote Receivers 20, 20A (identified below by a blue

circle), or Remote Receivers 20N 22-22' in Figs. 2, 6A, and 7 (*Id*.)

On its face, the claim requires that "base station data processing and transmission

facilities" provide "point-to-point communication between individual subscribers with remotely

located reception stations."  But these "remotely located reception stations" are not described or

identified anywhere in the patent and the requirement for "point-to-point communication"

described in the claim is impossible to implement in a manner that is consistent with the

specification.  This is clear from an examination of Fig. 1 from the '101 Patent reproduced

below.



As shown in Fig. 1 and supported by all intrinsic evidence, individual subscribers 4 can communicate in both directions with Local Area Repeater 3 ("base station data processing and transmission facilities") and Remote Receivers 20-20A ("base station reception means"). Remote Receivers 20-20A ("base station reception means") can communicate in both directions with individual subscribers 4, but can only send messages *to* Local Area Repeater 3 ("base station data processing and transmission facilities").  Local Area Repeater 3 ("base station data processing and transmission facilities") can communicate in both directions with individual subscribers 4, but can only receive messages *from* Remote Receivers 20-20A ("base station reception means").  The key fact is that the communication link between Local Area Repeater 3 ("base station data processing and transmission facilities") and Remote Receivers 20-20A ("base station reception means") is *one-way*, and it flows *from* Remote Receivers 20-20A ("base station

reception means") *to* Local Area Repeater 3 ("base station data processing and transmission facilities").

Given this structure, neither of these two components can be "remotely located reception stations," and the patent does not disclose any other options.

*First*, designating Local Area Repeater 3 ("base station data processing and transmission facilities") as "remotely located reception stations" would read "remotely located reception stations" out of the claim.  By using two distinct terms the patentee intended to claim two distinct components.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119-20 (Fed. Cir. 2004) ("when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.").  Substituting one for another would read a limitation out of the claim, rendering this interpretation legally infirm.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous.").

*Second*, designating Remote Receivers 20-20A "base station reception means" as "remotely located reception stations" would be impossible to implement consistent with the specification of the '101 Patent.  So interpreted, the claim would require that "base station data processing and transmission facilities" provide "point-to-point communication between individual subscribers with" Remote Receivers 20-20A.  But the "base station data processing and transmission facilities" cannot send messages to Remote Receivers 20-20A for transmission to individual subscribers because the communication link between the two components is *one way in the opposite direction*.  The "base station data processing and transmission facilities"

therefore cannot provide "point-to-point communication" from subscribers to Remote Receivers 20-20A, and Remote Receivers 20-20A cannot be "remotely located reception stations."

Even though this logical inconsistency could have been resolved by the simple deletion of "with remotely located reception stations," the claim is indefinite and invalid. *Michael S. Sutton Ltd.,* 647 F. Supp. 2d at 745 (invalidating a claim as indefinite even though "logical inconsistency would be most easily resolved by the simple deletion of the [offending term]").

For the foregoing reasons, these claims not amenable to construction and therefore indefinite. *Halliburton Energy Serv., Inc. v. M-I, LLC.*, 456 F. Supp. 2d 811, 815-817 (E.D. Tex. 2006) (Davis, J.), *aff'd,* 514 F.3d 1244 (Fed. Cir. 2008) (granting summary judgment of indefiniteness where "neither the specification nor any other evidence provide[d] an objective standard for determining the scope of these amorphous terms.").

### B.    "Synchronously Related"

Claims 2-13[7] of the '546 Patent are invalid as indefinite under 35 U.S.C. §112, ¶ 2 because it is unclear what the term "synchronously related" relates to in these claims.  Two other claims reciting this term clearly describe a reference point to which it is related.  (Ex. B, '546 Patent, Claim 1 ("synchronously related to a base station broadcast signal"), Claim 14 ("synchronously related to said digital messages").)  This is because the clarifying references in these other claims were added by amendment during the prosecution.

Importantly, during the prosecution of the '101 Patent, a claim similarly lacking such reference point was rejected as indefinite and was allowed only after the applicant added the requisite reference point for "synchronously related."   (Ex. G, '101 Patent File History, Amendment and Response, dated June 13, 1994, at SKYTEL0000283 (adding the clause "to said

---

[7]    Claims 3-13 of the '546 Patent depend from Claim 2 and therefore also include the term "synchronously related data messages."

base station broadcast signal" after the term "synchronously related").)  Independent Claim 2 of

the '546 Patent was not amended and issued without any such reference point for the

"synchronously related" language. (Ex. B, '546 Patent at 11:47.)  This omission is fatal to Claim

2 and its dependent claims.

The term "synchronously related" has no plain and ordinary meaning, and neither side

contends that it does.  As such, it is not only appropriate, but necessary, to turn to the

specification to understand the meaning of this term.  However, the specification is at best

ambiguous regarding the reference point for this term.  It provides several options:

(1)    "synchronously related to a broadcast television signal" (*Id.* at Abstract);

(2)    "relates synchronously with a base station carrier signal" (*Id.* at 3:45-46);

(3)    "[relates synchronously with] the television frames of a master TV channel" (*Id.*);

(4)    "[e]ach of these switched-in user home units then transmit a digital message superimposed on the 218-219 band subcarrier" (*Id.* at 6:47 and Fig. 3);

(5)    "[a]ll messages and protocols are consistent with the transmission of data implicitly as part of a video message during the vertical blanking interval" (*Id.* at 7:19-22); or

(6)    "[[a]ll messages and protocols are consistent with the] transmission over a digital r-f link parallel to a video channel" (*Id.* at 7:42-43).

The majority of these examples suggest that "synchronously related" may refer to some

sort of a TV or video signal.  The remaining two allude to the FCC IVDS standard, which is also

related to television.[8]  Given the plethora of possible constructions for this term, it is indefinite.

*Honeywell Int'l*, 341 F.3d at 1339-41 (where the "claims, the written description, and the

prosecution history fail[ed] to give [the court], as the interpreter of the claim term, any guidance

---

[8]    Ex. O, FCC Report and Order, January 16, 1992 at EON034312 (noting that IVDS data is to be "delivered by and coordinated with, broadcast television, cable TV, wireless cable, direct broadcast satellite, or any future television delivery methods.")

as to what one of ordinary skill in the art would interpret the claim to require," a claim term with three different proffered constructions was found to be insolubly ambiguous).

## VI.     CONCLUSION

This motion presents a pure and simple question of law and requires no further discovery. Deciding this motion at the present time will preserve judicial and party resources by significantly reducing the number of claims asserted in this case.   Defendants respectfully request that this Court enter judgment declaring Claims 1-15 of the '101 Patent and Claims 2-13 of the '546 Patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2.


DATED:  February 2, 2010                    Respectfully submitted:


                                            /s/ Jennifer H. Doan
                                            Jennifer H. Doan
                                            Texas Bar No. 08809050
                                            J. Scott Andrews
                                            Texas Bar No. 24064823
                                            HALTOM & DOAN
                                            6500 Summerhill Road, Suite 100
                                            Texarkana, TX 75503
                                            Tel:  (903) 255-1000
                                            Fax: (903) 255-0800
                                            jdoan@haltomdoan.com
                                            sandrews@haltomdoan.com


                                            Henry B. Gutman (admitted pro hac)
                                            Victor Cole (Texas PRID No. 3354198)
                                            T. Alexander Key (admitted pro hac)
                                            SIMPSON THACHER & BARTLETT LLP
                                            425 Lexington Avenue
                                            New York, NY 10017
                                            Tel:  (212) 455-2000
                                            Fax: (212) 455-2502
                                            hgutman@stblaw.com
                                            vcole@stblaw.com
                                            akey@stblaw.com

Jeffrey E. Ostrow (admitted pro hac)
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA 94304
Tel:  (650) 251-5000
Fax: (650) 251-5002
jostrow@stblaw.com

Leonard Charles Suchyta (admitted pro hac)
Caren K. Khoo (admitted pro hac)
Verizon Corporate Resources Group LLC
One Verizon Way
Basking Ridge, NJ 07920
Tel:  (908) 559-5623
Fax:  (908) 766-6974
leonard.suchyta@verizon.com
caren.khoo@verizon.com

**COUNSEL FOR DEFENDANT VERIZON
CLINTON CENTER DRIVE CORP.**

/s/ John P. Fry (with permission)_ ___
John P. Fry
Morris, Manning & Martin LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Telephone:  404-233-7000
Fax:  404-365-9532
bgh@mmmlaw.com
jfry@mmmlaw.com

**COUNSEL FOR DEFENDANT
SMARTSYNCH, INC.**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 2nd day of February, 2010.

_____ /s/ Jennifer H. Doan_____
Jennifer H. Doan