UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | | |
| Plaintiff, | | CIVIL ACTION NO. 6:08-CV-385-LED |
| v. | | **JURY TRIAL REQUESTED** |
| VERIZON CLINTON CENTER DRIVE CORP., | | |
| Defendant. | | |

## DEFENDANT VERIZON CLINTON CENTER DRIVE CORP.'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF EON CORP. IP HOLDINGS, LLC'S THIRD[1] AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure and the Court's Docket Control Order (Dkt. 173), Defendant Verizon Clinton Center Drive Corp. ("VCCDC"), by and through its undersigned counsel, responds to the Third Amended Complaint for Patent Infringement and Jury Demand ("Complaint") of Plaintiff EON Corp. IP Holdings, LLC ("IP Holdings" or "Plaintiff"), as follows:

### PARTIES

1.      Upon information and belief, IP Holdings is a limited liability company organized under the laws of the State of Texas with its registered office located at 110 North College, 500 Plaza Tower, Tyler, Texas 75702.

---

[1]      The Court's docket reflects only two complaints filed before the present complaint: the Complaint (Dkt. 1) and the "First Amended Complaint" (Dkt. 8).

2.      VCCDC is a Delaware corporation with its principal place of business at 22001 Loudoun County Parkway, Ashburn, VA 20147.  VCCDC denies the remaining allegations set forth in Paragraph 2.

## JURISDICTION AND VENUE

3.      VCCDC admits that IP Holdings purports to bring this action under 35 U.S.C. § 271.  The remaining allegations set forth in Paragraph 21 state a legal conclusion to which no response is required; if such a response is required, VCCDC denies those allegations to the extent they relate to VCCDC.

4.      VCCDC admits that IP Holdings purports to base subject matter jurisdiction upon 28 U.S.C. §§ 1331 and 1338(a).  The remaining allegations set forth in Paragraph 4 state a legal conclusion to which no response is required; if such a response is required, VCCDC denies those allegations to the extent they relate to VCCDC.

5.      VCCDC does not conduct business within the State of Texas and has not conducted business anywhere since selling substantially all of its assets.   The remaining allegations set forth in Paragraph 5 state a legal conclusion to which no response is required; if such a response is required, VCCDC denies those allegations.

6.      VCCDC admits that IP Holdings purports to base venue in this District upon 6 U.S.C. §§ 1391 and 1400(b).  VCCDC denies the remaining allegations set forth in Paragraph 6.

## COUNT 1:  ALLEGED PATENT INFRINGEMENT

7.      VCCDC admits that the United States Patent and Trademark Office ("PTO") issued U.S. Pat. No. 5,388,101 (the "'101 Patent") on February 7, 1995.  VCCDC denies that the '101 Patent was duly and legally issued.  VCCDC denies that IP Holdings is the assignee of all

rights, title, and interest in and to the '101 Patent and possesses all rights of recovery under the '101 Patent, including the right to recover damages for past infringement.

8.      VCCDC admits that the PTO issued U.S. Pat. No. 5,481,546 (the "'546 Patent") on January 2. 1996.  VCCDC denies that the '546 Patent was duly and legally issued.  VCCDC denies that IP Holdings is the assignee of all rights, title, and interest in and to the '546 Patent and possesses all rights of recovery under the '546 Patent, including the right to recover damages for past infringement.

9.      VCCDC denies the allegations set forth in Paragraph 9.

10.     VCCDC denies the allegations set forth in Paragraph 10.

11.     VCCDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11, and, on that basis, denies them.

12.     VCCDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12, and, on that basis, denies them.

13.     VCCDC lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13, and, on that basis, denies them.

14.     VCCDC denies all allegations not specifically admitted herein.

## RESPONSE TO IP HOLDINGS' PRAYER FOR RELIEF

15.     Paragraphs A through G of the Complaint set forth the statement of relief requested by IP Holdings, to which no response is required.  VCCDC denies that IP Holdings is entitled to any of the requested relief and denies any allegations contained therein.

## JURY DEMAND

16.     VCCDC denies that IP Holdings is entitled to a trial by jury except as permitted by law.

## DEFENSES

17.     VCCDC, as further and separate defenses to the Complaint and without assuming any burden it would not otherwise have, alleges, upon information and belief, the following defenses:

### FIRST DEFENSE
### (Lack of Standing)

18.     Upon information and belief, IP Holdings lacks standing to bring this suit.

### SECOND DEFENSE
### (IP Holding is Not an Exclusive Licensee)

19.     Upon information and belief, IP Holdings is not an exclusive licensee to the '101 Patent and/or the '546 Patent.

### THIRD DEFENSE
### (Failure to State a Claim)

20.     Each and every one of IP Holdings' claims for relief and each and every one of its allegations fails to state a claim upon which any relief may be granted against VCCDC.

### FOURTH DEFENSE
### (Non-Infringement)

21.     VCCDC has not and does not infringe, directly and/or indirectly, including, without limitation, through inducement and/or contributory infringement, any valid and enforceable claim of the '101 Patent, either literally, under the doctrine of equivalents, or otherwise.

22.     VCCDC has not and does not infringe, directly and/or indirectly, including, without limitation, through inducement and/or contributory infringement, any valid and enforceable claim of the '546 Patent, either literally, under the doctrine of equivalents, or otherwise.

**FIFTH DEFENSE**
**(Invalidity)**

23.     The '101 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations and laws pertaining thereto.

24.     The '546 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations and laws pertaining thereto.

**SIXTH DEFENSE**
**(Unenforceability)**

25.     The '101 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '101 Patent application and/or related patent applications.

26.     The '546 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '546 Patent application and/or related patent applications.

27.     In particular, individuals associated with the filing and prosecution of the '101 and '546 Patents, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, committed inequitable conduct by breaching their duty to disclose information material to patentability of the '101 Patent and/or the '546 Patent.

28.     In one instance of inequitable conduct, said individuals failed to disclose U.S. Pat. No. 4,659,878 (the "'878 Patent") and prior art cited therein.  The '878 Patent lists Gilbert M. Dinkins as its sole inventor.  The '878 Patent, entitled "Method And Apparatus For Interference Free Communications Between A Remote Handset And A Host Subscriber Unit In A Cellular Radio Telephone," issued on April 21, 1987, more than five years before the '101 Patent was

filed on October 26, 1992, and more than seven years before the '546 Patent application was filed on May 10, 1994, and is therefore prior art to both the '101 Patent and the '546 Patent.

29.     Just like the '101 Patent and/or the '546 Patent, the '878 Patent is directed to wireless communication networks, discloses and claims a similar subject matter, and therefore contains information material to the patentability of the claims of both the '101 Patent and the '546 Patent.  For example, the '878 Patent discloses a two-way interactive communication network wherein communications between a base station and an end user are facilitated through an intermediate device.

30.     Upon information and belief, the information contained in the '878 Patent is not cumulative to the information that was before the Examiner during prosecution of the '101 Patent and the '546 Patent.

31.     A reasonable examiner would have considered the information in the '878 Patent material in examining the claims of the '101 Patent and the '546 Patent because of the similarity of the subject matter of the '878 Patent relative to the claims of the '101 Patent and the '546 Patent.

32.     As the sole listed inventor of both the '101 Patent and the '546 Patent as well as the '878 Patent, Mr. Dinkins knew that the '878 Patent issued before the filing of either the '101 Patent and/or the '546 Patent and, given the similarity in the information described, knew or should have known that the '878 Patent was material to the patentability of the claims of the '101 Patent or the '546 Patent.

33.     The individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the

PTO by withholding the '878 Patent and otherwise failing to disclose it to the PTO. Upon information and belief, Mr. Dinkins and/or his prosecuting attorney withheld and failed to disclose the '878 Patent during the prosecution of the '101 Patent and '546 Patent knowingly and with an intent to deceive the PTO to obtain issuance of the '101 Patent and the '546 Patent.

34.     The knowing failure to disclose the '878 Patent with an intent to deceive the PTO represents one instance of inequitable conduct rendering both the '101 Patent and the '546 Patent unenforceable.

35.     In another instance of inequitable conduct, individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or his prosecuting attorney, failed to disclose references material to patentability that were cited in an International Search Report ("ISR") for a PCT counterpart of the '101 Patent, WO 94/10803. The WO 94/10803 PCT application includes a set of claims identical to the claims of the '101 Patent application. In the ISR, a PCT patent examiner identified a number of prior art references, including U.S. Pat. Nos. 4,750,036 and 4,928,177, which were marked as "Y" references, denoting prior art of "particular relevance" to obviousness.

36.     The meaning of a "Y" reference in an ISR is that "the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more such documents such combination being obvious to a person skilled in the art."

37.     Upon information and belief, the references and information contained in the ISR are not cumulative to the information that was before the Examiner during prosecution of both the '101 Patent and the '546 Patent.

38.     A reasonable examiner would have considered the information in the ISR and/or prior art references cited therein material in examining the claims of the '101 Patent and the '546 Patent at least because of the similarity of the subject matter of the prior art references cited in the ISR to the subject matter of the claims of the '101 Patent and the '546 Patent, and also because a PCT patent examiner had already determined that those prior art references rendered a similar set of claims obvious.

39.     Upon information and belief, the ISR was mailed to the prosecuting attorney of the '101 Patent and the '546 Patent on March 30, 1994, prior to the issuance of the '101 Patent and prior to the filing of the '546 Patent. Thus, at least the prosecuting attorney of the '101 Patent and the '546 Patent knew or should have known that the ISR and the references listed therein were material to the patentability of the claims of both the '101 Patent and the '546 Patent.

40.     The individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, their prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the ISR and otherwise failing to disclose it to the PTO with an intent to deceive the PTO to obtain issuance of the '101 Patent and the '546 Patent.

41.     U.S. Pat. No. 4,928,177 ("'177 Patent") cited in the ISR was considered by the PTO for the first time in the recent *ex parte* reexaminations of both the '101 Patent and the '546 Patent.   On August 7, 2009, the PTO mailed a non-final office action in the *ex parte* reexamination of the '101 Patent, rejecting all claims as anticipated or obvious, *inter alia*, over the '177 Patent.   On the same day, the PTO mailed a non-final office action in the *ex parte*

reexamination of the '546 Patent, rejecting Claims 1-12 and 14 of the '546 Patent as obvious over, *inter alia*, the '177 Patent.

42.     Further, on May 10, 2010, the PTO mailed a final office action in the ex parte reexamination of the '101 Patent, rejecting Claim 19 of the '101 Patent under 35 U.S.C. § 102(b) as anticipated by the '177 Patent, and rejecting Claims 19 and 20 under 35 U.S.C. § 103(a) as obvious over, *inter alia*, the '177 Patent.

43.     The knowing failure to disclose the ISR and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '101 Patent and the '546 Patent unenforceable.

44.     In yet another instance of inequitable conduct, the individuals associated with the filing and prosecution of the '101 Patent and the '546 Patent, including, without limitation, Gilbert M. Dinkins, the sole listed inventor, and/or their prosecuting attorney failed to disclose— in connection with the prosecution of the '546 Patent—information material to its patentability that became known to said individuals in connection with the prosecution of co-pending, related patent applications.

45.     More specifically, during the prosecution of Pat. App. Ser. No. 08/240,883 (the "'833 Application"), a PTO examiner cited U.S. Pat. No. 4,482,895 (the "'895 Patent") as "pertinent to applicant's disclosure."  The '833 Application is a divisional application related to the '101 Patent and '546 Patent applications and claimed a similar subject matter.  The '833 Application listed Gilbert M. Dinkins as its sole inventor.  The '895 Patent, entitled "Multi-Channel Micropower Communication Link," issued on November 13, 1984, several years before the '546 Patent application was filed, and is therefore prior art to the '546 Patent.

46.     Just like the '546 Patent, the '895 Patent is directed to wireless communications, discloses and claims a similar subject matter, and therefore contains information material to the patentability of the claims of the '546 Patent.  For example, it discloses a transmitter/receiver employing suitable microchip circuitry to pulse modulate a transmitted, *e.g*., radio frequency, signal and to demodulate the received signal to detect for a selected pulse width in the transmitted signal, thereby enabling coding of selected channels.

47.     Upon information and belief, the information contained in the '895 Patent is not cumulative to the information that was before the Examiner during prosecution of the '546 Patent.

48.     A reasonable examiner would have considered the information in the '895 Patent material in examining the claims of the '546 Patent because of the similarity of the subject matter of these two patents.

49.     Upon information and belief, an Office Action citing the '895 Patent was mailed to the prosecuting attorney of the '546 Patent on February 27, 1995, prior to the issuance of the '546 Patent.  Thus, at least the prosecuting attorney of the '546 Patent knew or should have known that the '895 Patent was material to the patentability of the claims of the '546 Patent.

50.     The individuals associated with the filing and prosecution of the '546 Patent, including, without limitation, its prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the '895 Patent and otherwise failing to disclose it to the PTO with an intent to deceive the PTO to obtain issuance of the '546 Patent.

51.     The knowing failure to disclose the '895 Patent and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '546 Patent unenforceable.

52.     In yet another instance of inequitable conduct, during the prosecution of Pat. App. Ser. No. 08/348,618 (the "'618 Application"), a PTO examiner rejected a number of its claims over U.S. Pat. Nos. 5,282,204 and 5,444,698 (the "'204 and '698 Patents").   The '618 Application was a divisional application related to the '101 and '546 Patent applications and claimed a similar subject matter.   The '618 Application listed Gilbert M. Dinkins as its sole inventor.   Both the '204 and '698 Patents were filed before the '546 Patent application was filed and are therefore prior art to the '546 Patent.

53.     Just like the '546 Patent, the '204 and '698 Patents are directed to wireless communications, describe and claim a similar subject matter, and therefore contain information material to the patentability of the claims of the '546 Patent.   For example, the '204 Patent discloses an apparatus and method for overlaying data on trunked radio comprising the steps of transmitting data from a local base station repeater cell to a modem communicatively coupled to the local base station repeater cell and transmitting the data received by the modem to a subscriber unit communicatively coupled to the modem.   The '698 Patent discloses a mobile radio communication system.

54.     Upon information and belief, the information contained in the '204 and '698 Patents is not cumulative to the information that was before the Examiner during prosecution of the '546 Patent.

55.     A reasonable examiner would have considered the information in the '204 and/or '698 Patents material in examining the claims of the '546 Patent at least because of the similarity of the subject matter of these two patents.

56.     Upon information and belief, an Office Action citing the '204 and '698 Patents was mailed to the prosecuting attorney of the '546 Patent on September 26, 1995, prior to the issuance of the '546 Patent.  Thus, at least the prosecuting attorney of the '546 Patent knew or should have known that the '204 and '698 Patents were material to the patentability of the claims of the '546 Patent.

57.     The individuals associated with the filing and prosecution of the '546 Patent, including, without limitation, its prosecuting attorney, did not exercise their duty of candor and good faith in dealing with the PTO by knowingly withholding the '204 and '698 Patents and otherwise failing to disclose them to the PTO with an intent to deceive the PTO to obtain issuance of the '546 Patent.

58.     The knowing failure to disclose the '204 and '698 Patents and the prior art references cited therein with an intent to deceive the PTO represents another instance of inequitable conduct rendering the '546 Patent unenforceable.

## SEVENTH DEFENSE
### (Claims Barred)

59.     IP Holdings' claims are barred, in whole or in part, based on prosecution history estoppel and/or prosecution history disclaimer.

## EIGHTH DEFENSE
### (Limitations on Damages and Costs)

60.     IP Holdings failed to provide adequate notice to VCCDC of alleged infringement prior to the filing of this lawsuit and is thus barred under 35 U.S.C. § 287 from recovering damages from VCCDC for any alleged infringement prior to the filing of this lawsuit.  IP

Holdings may not recover damages for any alleged infringement committed more than six years prior to the filing of this lawsuit under 35 U.S.C. § 286.  IP Holdings is barred by 35 U.S.C. § 288 from recovering any costs associated with its action.

## NINTH DEFENSE
### (Prosecution History Estoppel)

61.     Based on statements, representations, admissions, and/or other conduct during the prosecution of the '101 Patent application and/or related patent applications, IP Holdings is estopped from asserting any interpretation of the claims of the '101 Patent that would cover any of VCCDC's former products or services.

62.     Based on statements, representations, admissions, and/or other conduct during the prosecution of the '546 Patent application and/or related patent applications, IP Holdings is estopped from asserting any interpretation of the claims of the '546 Patent that would cover any of VCCDC's former products or services.

## TENTH DEFENSE
### (Equitable Defenses)

63.     IP Holdings' claims are barred under principles of equity, including, without limitation, laches, prosecution laches, waiver, estoppel, unclean hands, and/or other equitable theories because Plaintiff, the inventors, and/or previous owners or assignees of the '101 Patent and the '546 Patent knew for many years of the basis for the allegations they now assert but unreasonably delayed in bringing this action, and because Plaintiff had become aware of prior art invalidating the '101 Patent and the '546 Patent, and/or of acts, omissions, statements, or circumstances rendering the '101 Patent and the '546 Patent unenforceable, but nevertheless proceeded to assert the invalid and unenforceable patents in this action.

## ELEVENTH DEFENSE
### (Adequate Remedy at Law)

64.     IP Holdings is not entitled to injunctive relief because any alleged injury to IP Holdings is not immediate or irreparable and IP Holdings has an adequate remedy at law.

## TWELFTH DEFENSE
### (IP Holdings Cannot Prove Exceptional Case)

65.     IP Holdings cannot prove that this is an exceptional case justifying award of attorney fees against VCCDC pursuant to 35 U.S.C. § 285 because VCCDC has not infringed and does not infringe, willfully or otherwise, any valid and enforceable claim of the '101 Patent or the '546 Patent.

## THIRTEENTH DEFENSE
### (Bankruptcy)

66.     IP Holdings claims are barred, in whole or in part, pursuant to Chapter 11 of the United States Bankruptcy Code.

## FOURTEENTH DEFENSE
### (Government Sales)

67.     To the extent that certain products and/or services accused of infringing the '101 Patent and/or the '546 Patent are used by and/or manufactured for the United States Government, IP Holdings' claims against VCCDC with respect to such products may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## FIFTEENTH DEFENSE
### (Dedication to the Public)

68.     IP Holdings' claims are barred, in whole or in part, because embodiments not literally claimed in the '101 Patent and/or the '546 Patent were dedicated to the public.

## RESERVATION OF ADDITIONAL DEFENSES

69.     VCCDC reserves all defenses under Rule 8 of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses at law or in equity that may exist now or that may be available in the future.

## <u>COUNTERCLAIMS</u>

Without waiver of any rights, including the right to seek dismissal and/or transfer of this action, VCCDC, by and through its undersigned counsel, and by way of Counterclaims against IP Holdings, alleges:

## PARTIES

1.     Defendant VCCDC is a Delaware corporation with its principal place of business at 22001 Loudoun County Parkway, Ashburn, VA 20147.

2.     Upon information and belief, IP Holdings is a limited liability company organized under the laws of the State of Texas with its registered office located at 110 North College, 500 Plaza Tower, Tyler, Texas 75702.

## JURISDICTION AND VENUE

3.     These counterclaims arise under the United States patent laws, 35 U.S.C. § 1, et seq., and seek relief for which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

5.     IP Holdings has sued VCCDC for patent infringement of the '101 Patent and the '546 Patent.   VCCDC denies that IP Holdings has standing to bring this action, denies infringement and denies that these patents are valid or enforceable.   There is therefore a substantial, actual, and continuing controversy between IP Holdings and VCCDC as to the

propriety of this action and as to the infringement, validity and enforceability of the '101 Patent and the '546 Patent.

6.      IP Holdings has consented to personal jurisdiction in this District by commencing therein its action for patent infringement against VCCDC.

## FIRST COUNTERCLAIM
### (Declaratory Judgment That IP Holdings Lacks Standing)

7.      VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 6 as though fully set forth herein.

8.      Upon information and belief, IP Holdings is not the assignee of all rights, title, and interest in and to the '101 Patent and '546 Patent and does not possess all rights of recovery under the '101 Patent and/or '546 Patent, including the right to recover damages for past infringement, and, therefore, IP Holdings lacks standing to bring this suit.

9.      A judicial declaration that IP Holdings is not the assignee of all rights, title, and interest in and to the '101 Patent and '546 Patent and does not possess all rights of recovery under the '101 Patent and/or '546 Patent, including the right to recover damages for past infringement is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '101 Patent and '546 Patent.

## SECOND COUNTERCLAIM
### (IP Holding is Not an Exclusive Licensee)

10.      VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 9 as though fully set forth herein.

11.      Upon information and belief, IP Holdings is not an exclusive licensee to the '101 Patent and/or the '546 Patent.

12.     A judicial declaration that IP Holdings is not an exclusive licensee to the '101 Patent and/or the '546 Patent is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '101 Patent and '546 Patent.

### THIRD COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

13.     VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 12 as though fully set forth herein.

14.     VCCDC has not infringed and does not infringe any valid and enforceable claim of the '101 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

15.     VCCDC has not contributorily infringed or induced to infringe, and does not contributorily infringe or induce to infringe, any valid and enforceable claim of the '101 Patent.

16.     A judicial declaration that VCCDC has not infringed and does not infringe the '101 Patent is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '101 Patent.

17.     VCCDC has not infringed and does not infringe any valid and enforceable claim of the '546 Patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

18.     VCCDC has not contributorily infringed or induced to infringe, and does not contributorily infringe or induce to infringe, any valid and enforceable claim of the '546 Patent.

19.     A judicial declaration that VCCDC has not infringed and does not infringe the '546 Patent is necessary and appropriate at this time so that VCCDC can ascertain its rights and

duties with respect to the products and/or services that IP Holdings accuses of infringing the '546 Patent.

### FOURTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

20.     VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 19 as though fully set forth herein.

21.     The '101 Patent is invalid under the provisions of 35 U.S.C. § 101, et seq., including, without limitation, §§ 102, 103, and 112.

22.     A judicial declaration that the '101 Patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '101 Patent.

23.     The '546 Patent is invalid under the provisions of 35 U.S.C. § 101, et seq., including, without limitation, §§ 102, 103, and 112.

24.     A judicial declaration that the '546 Patent is invalid because it fails to satisfy the conditions for patentability specified in Title 35 of the United States Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '546 Patent.

### FIFTH COUNTERCLAIM
### (Declaratory Judgment of Unenforceability)

25.     VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 24 as though fully set forth herein.

26.     The '101 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution

of the '101 Patent application and/or related patent applications.   For the basis of this counterclaim, VCCDC incorporates by reference paragraphs 25-58 of its Sixth Defense herein.

27.    A judicial declaration that the '101 Patent is unenforceable is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '101 Patent.

28.    The '546 Patent is unenforceable due to the doctrine of estoppel, IP Holdings' acts, failure to act, omissions, deceptive intent, and/or inequitable conduct during the prosecution of the '101 Patent application and/or related patent applications.

29.    A judicial declaration that the '546 Patent is unenforceable is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '546 Patent.   For the basis of this counterclaim, VCCDC incorporates by reference paragraphs 25-58 of its Sixth Defense herein.

**SIXTH COUNTERCLAIM**
**(Declaratory Judgment That Plaintiff's Claims Are Barred Under Chapter 11 of United States Bankruptcy Code)**

30.    VCCDC repeats and realleges each allegation set forth in Paragraphs 1 through 29 as though fully set forth herein.

31.    VCCDC acquired the allegedly infringing business through its acquisition of MCI, Inc. (f/k/a WorldCom) which emerged from Chapter 11 of the United States Bankruptcy Code.

32.    As a matter of law, any potential liability with respect to the '101 Patent and the '546 Patent was discharged, in whole or in part, pursuant to Chapter 11 of the United States Bankruptcy Code.

33.     A judicial declaration that any potential liability of VCCDC with respect to the '101 Patent and the '546 Patent was discharged, in whole or in part, pursuant to Chapter 11 of the United States Bankruptcy Code is necessary and appropriate at this time so that VCCDC can ascertain its rights and duties with respect to the products and/or services that IP Holdings accuses of infringing the '546 Patent.

## RESERVATION OF ADDITIONAL COUNTERCLAIMS

34.     As discovery in this case has not yet finished, and as VCCDC continues to investigate the allegations set forth in IP Holdings' First Amended Complaint, VCCDC specifically gives notice that it intends to rely upon additional counterclaims as may become available by law, statute, or upon further discovery proceeding in this case.  As such, VCCDC hereby reserves the right to further amend its Answer and to assert such additional counterclaims as allowed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Texas.

## PRAYER FOR RELIEF

VCCDC respectfully prays for the following relief:

A.     That IP Holdings take nothing by its Complaint;

B.     That the Court dismiss each and every claim in the Complaint with prejudice;

C.     That the Court find and enter a judgment declaring that IP Holdings has no standing to bring this suit;

D.     That the Court find and enter a judgment declaring that IP Holdings is not the exclusive licensee of the '101 Patent and/or the '546 Patent;

E.     That the Court find and enter a judgment declaring that no claim of the '101 Patent is infringed or has been infringed by VCCDC;

F.      That the Court find and enter a judgment declaring the '101 Patent to be invalid;

G.      That the Court find and enter a judgment declaring the '101 Patent to be unenforceable;

H.      That the Court find and enter a judgment declaring that no claim of the '546 Patent is infringed or has been infringed by VCCDC;

I.      That the Court find and enter a judgment declaring the '546 Patent to be invalid;

J.      That the Court find and enter a judgment declaring the '546 Patent to be unenforceable;

K.      That the Court award costs to VCCDC in accordance with 35 U.S.C. § 284;

L.      That the Court declare VCCDC's case to be exceptional and award VCCDC its attorneys' fees and expenses against IP Holdings under 35 U.S.C. § 285;

M.      That the Court declare IP Holdings' claims are barred pursuant to 11 U.S.C. § 1141(d)(1)(A);

N.      That the Court deny that IP Holdings' case is exceptional; and

O.      That the Court award VCCDC any other relief the Court may deem just, equitable, and proper.

DATED: July 19, 2010                          Respectfully submitted,

                                    By:     /s/ Jennifer H. Doan
                                            Jennifer H. Doan
                                            Texas Bar No. 08809050
                                            J. Scott Andrews
                                            Texas Bar No. 24064823
                                            HALTOM & DOAN
                                            6500 Summerhill Road, Suite 100
                                            Texarkana, TX 75503
                                            Tel:  (903) 255-1000
                                            Fax: (903) 255-0800
                                            jdoan@haltomdoan.com
                                            sandrews@haltomdoan.com

Henry B. Gutman (admitted *pro hac*)
Victor Cole (Texas PRID No. 3354198)
T. Alexander Key (admitted *pro hac*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel:  (212) 455-2000
Fax: (212) 455-2502
hgutman@stblaw.com
vcole@stblaw.com
akey@stblaw.com

Jeffrey E. Ostrow (admitted *pro hac*)
Natasa Pajic (admitted *pro hac*)
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA 94304
Tel:  (650) 251-5000
Fax: (650) 251-5002
jostrow@stblaw.com
npajic@stblaw.com

Leonard C. Suchyta (admitted *pro hac*)
John P. Frantz (admitted *pro hac*)
Verizon Corporate Resources Group LLC
One Verizon Way
Basking Ridge, NJ 07920
Tel:  (908) 559-5623
Fax:  (908) 766-6974
leonard.suchyta@verizon.com
john.frantz@verizon.com

**COUNSEL FOR DEFENDANT AND
COUNTERCLAIMANT VERIZON
CLINTON CENTER DRIVE CORP.**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 19th day of July 2010.  Any other counsel of record will be served via first class U.S. mail.

/s/ Jennifer H. Doan
Jennifer H. Doan